IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GILBERT L. LANE,

       Petitioner,

v.

MARK NOOTH,

       Respondent.

Case No. 3:08-cv-00115-JO

OPINION AND ORDER

Kristina S. Hellman
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

       Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Kristen E. Boyd, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

       Attorneys for Respondent

1 - OPINION AND ORDER

JONES, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court convictions for Robbery, Murder, and Aggravated Murder. For the reasons that follow, the Second Amended Petition for Writ of Habeas Corpus (#32) should be denied.

## BACKGROUND

In 1985, a jury convicted petitioner of Robbery in the First Degree, Murder, and Aggravated Murder. The trial court merged the Robbery and Murder convictions into the Aggravated Murder conviction and sentenced petitioner to life in prison. The Oregon Court of Appeals affirmed the trial court's decision without opinion, and the Oregon Supreme Court denied review. *State v. Lane,* 82 Or. App. 551, 728 P.2d 977 (1986), *rev. denied*, 302 Or. 657, 733 P.2d 1381 (1987).

Petitioner was later able to secure post-conviction relief ("PCR") where the PCR trial court determined that both trial and appellate counsel should have objected when the trial court's jury instructions did not require a finding of intent for Aggravated Murder. As a result, in May of 1998, the PCR trial court vacated the Aggravated Murder conviction and remanded the case for further proceedings. Respondent's Exhibit 129.

Petitioner appeared before the sentencing court numerous times between July 9, 1999 and his ultimate resentencing on October 9, 2000. He repeatedly complained that it was difficult to conduct legal research while incarcerated, and vacillated between wishing to proceed *pro se*, with the assistance of an

2 - OPINION AND ORDER

appointed attorney, or with an attorney advisor. The judges assigned to his case specifically advised him of the perils of representing himself along the way.

The State informed the sentencing court that it would not proceed further on the Aggravated Murder charge. Respondent's Exhibit 104 (9/16/1999), p. 12. Instead, the State wished to "unmerge" petitioner's Aggravated Murder, Murder, and Robbery convictions, something petitioner asserted the State had no right to do. As a result, petitioner filed a *pro se* mandamus action challenging the State's unmerging of the charges wherein he alleged that because the charges could not be unmerged, and where the State had already dismissed the Aggravated Murder charge, there was no valid custodial order. Respondent's Exhibit 104 (2/2/2000), pp. 12-13. The sentencing court denied the petition.

Petitioner once again moved for appointed counsel, and the court initially refused to appoint counsel stating that "we've been down that road several times and I'm just going to deny that because you've demonstrated over and over again that you are not able or willing to work with an attorney[.]" Respondent's Exhibit 104 (3/15/2000), p. 49. The judge eventually relented and appointed Mark Cross to represent petitioner. Mr. Cross was petitioner's fifth attorney, something that made him "somewhat hesitant" based upon the reputation petitioner had established among the defense bar. Respondent's Exhibit 144, p. 1.

Mr. Cross appeared on petitioner's behalf in September 2000. Petitioner had pending *pro se* motions for a new trial and for appointment of counsel to represent him in the new trial. The

3 - OPINION AND ORDER

court asked Cross whether a new trial was warranted, and Cross replied that he did not believe there to be any merit to the motion for a new trial. *Id* at 2. As a result, the court denied the motions for new trial and for counsel.

On October 9, 2000, petitioner appeared for sentencing, but the court first addressed the issue of Cross' motion to withdraw. In an affidavit Cross filed with the court, he stated that in his 27 years of criminal defense practice, he had "never encountered a defendant as difficult as [petitioner]" and that he agreed with the opinion of prior counsel that it was not possible for petitioner to work peaceably with any attorney, whether appointed as such or in an advisory capacity. Respondent's Exhibit 143. The court granted counsel's request to withdraw, denied petitioner's request for substitute counsel, and required him to proceed with his sentencing *pro se*:

> Well, and I'll make a brief record on that I guess. We've had repeated – repeated times we've had attorneys, some of the best attorneys in the State appointed to represent you, you have repeatedly frustrated those attorneys to the point where they have resigned. You have refused to cooperate with them and you have sabotaged your case repeatedly. We are not going to delay any further.

Respondent's Exhibit 104 (10/9/2000), p. 6.

During the ensuing sentencing hearing, the State took the position that the court was required to give petitioner a life sentence, with no discretion to impose a lesser sentence. Petitioner argued against this sentence, but after 90 minutes of allocution, the court interrupted him and advised him "that any

4 - OPINION AND ORDER

further discussion of mitigation is really irrelevant." *Id* at 53. The court then proceeded to impose the statutorily required life sentence. ORS 163.115(3) (1981).

Petitioner took a direct appeal in which he argued that the sentencing court should have: (1) appointed substitute counsel; (2) granted petitioner additional time to prepare for sentencing; and (3) allowed him to fully present his mitigation evidence. The Oregon Court of Appeals affirmed the sentencing court's decision without opinion, and the Oregon Supreme Court denied review. Respondent's Exhibits 109 & 110.

Petitioner next filed for post-conviction relief ("PCR") in Malheur County where the PCR trial court denied relief. In doing so, the PCR trial court stated the following:

> Court had authority to resentence. No proof of inadequacy of any attorney on any allegation. No proof of prejudice. Petitioner chose by his conduct and statements to the court to go *pro se*. Matter was litigated on appeal. Life sentence was statutorily required. No inadequacy by appellate attorney or prejudice. Insufficient proof that any transcript is missing or would in any way have changed outcome.

Respondent's Exhibit 147. The Oregon Court of Appeals affirmed the PCR trial court's decision without opinion, and the Oregon Supreme Court denied review. Respondent's Exhibits 154 & 155.

In this federal habeas corpus case, petitioner pursues the following claims:

> 1. The sentencing court erred when it (a) permitted Cross to withdraw on the day of sentencing and required petitioner to proceed


5 - OPINION AND ORDER

*pro se* where it was debatable whether petitioner was responsible for the breakdown in the attorney-client relationship; (b) refused petitioner access to evidence that would prove his side of the story; and (c) denied petitioner's motion for a continuance to prepare for the resentencing;

2. Appellate counsel was constitutionally ineffective for failing to raise: (1) the unmerging of lawfully merged sentences; (2) the sentencing court's refusal to provide petitioner with new counsel and taped conversations he had with previous attorneys; and (3) the fact that the indictment was flawed in that it did not specifically allege "Felony Murder" such that the State could not obtain a conviction on that charge;

3. Petitioner's Sixth Amendment right to conflict-free counsel was violated where Cross: (a) presented prejudicial facts, made critical legal omissions, and provided the court with incorrect information during the resentencing hearing; and (b) failed to provide petitioner with a copy of his file and tapes of their meetings so he could establish that he was not at fault for the breakdown in the attorney-client relationship, thereby preventing petitioner from receiving new appointed counsel; and

4. Cross rendered ineffective assistance when he: (a) presented prejudicial facts, made critical legal omissions, and provided the court with incorrect information during the resentencing hearing; (b) failed to inform petitioner of critical legal authority that would have altered the outcome of the resentencing; (c) failed to provide petitioner with the file and tapes of their meetings so he could establish he was not responsible for the breakdown in their relationship, and this failure prevented petitioner from receiving new appointed counsel; (d) failed to challenge the remand order on all available bases; and (e) failed to investigate, develop, and present any

mitigation evidence. Notice Regarding Claims Addressed in the Brief (#76).[1]

## DISCUSSION

### I. Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas

---

[1] These claims reflect petitioner's argued claims, not the totality of the claims he raises in his Amended Petition. Petitioner's unargued claims are denied on the basis that he has not argued them and, therefore, has not sustained his burden of proof. See *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims). Even if petitioner had briefed the merits of these claims, the court has examined them based upon the existing record and determined that they do not entitle him to relief.

7 - OPINION AND ORDER

court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In such an instance, although the court independently reviews the record, it still lends deference to the state court's ultimate decision. *Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

## II. Ground One: Claims of Trial Court Error

According to petitioner, the sentencing court should not have allowed Cross to withdraw on the day set for sentencing and, where it did, it should have granted a continuance. He also maintains that the court should have required Cross to turn over tape recordings of conversations between counsel and client because they might have shown that petitioner was not necessarily responsible for the breakdown in the attorney-client relationship. The record is quite clear in this case that

8 - OPINION AND ORDER

petitioner had been particularly problematic for several different attorneys and for an extended period of time. As Cross described, "Mr. Lane was incapable of establishing any sort of relationship with some of the finest attorneys currently involved in death penalty litigation in this state." *See* Respondent's Exhibit 146, p. 3. Even before Cross was appointed, one of petitioner's prior attorneys "predicted to the court that [petitioner] would most likely not be able to [establish any sort of relationship] with any attorney." *Id.* Based upon the totality of the record, the sentencing court's determination that petitioner had refused to cooperate with appointed counsel was not an unreasonable factual ruling.

There is no clearly established federal law which required the sentencing court to provide petitioner with yet another attorney after Cross withdrew, especially where the record supports the conclusion that petitioner was a constant problem for the attorneys appointed to represent him. Although petitioner believes he had a conflict of interest where Cross was not supportive of his motion for a new trial, a difference of opinion over the viability of a motion does not amount to a constitutionally-significant conflict of interest. *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980) (an actual conflict of interest must adversely affect the performance of counsel).

Given this history, and the excessive delay in petitioner's re-sentencing proceedings, the court reasonably declined to grant

9 - OPINION AND ORDER

another continuance.[2] This is especially true where petitioner's life sentence was statutorily mandated with no room for a downward departure at the discretion of the sentencing court, and where the trial judge was unwilling to tolerate any more delay where he believed petitioner had repeatedly sabotaged his case by refusing to cooperate with his attorneys. Respondent's Exhibit 104 (10/9/2000), p. 6.

Petitioner also takes issue with the sentencing court's refusal to order defense counsel to turn over audio tape recordings of their conversations. Petitioner reasons that had the court required Cross to turn over the tapes as part of his client file, he could have shown that he was not the cause of the ultimate breakdown of the attorney-client relationship such that he was entitled to another attorney. Although petitioner asserts that the Oregon State Bar ethical rules required Cross to turn the tapes over to his client, there is no record that the Oregon State Bar took any action against Cross when petitioner presented it with this issue. Respondent's Exhibit 145. In addition, petitioner cites to no evidence in the record that the taped recordings contained information that might have affected the sentencing court's decision regarding the appointment of another attorney for sentencing. As such, petitioner is unable to prevail on this claim.

---

[2] The court notes respondent's assertion that this claim is unpreserved for federal habeas corpus review, but elects to proceed to the merits of the claim because petitioner is not entitled to relief. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").

### III. Ground Two: Ineffective Assistance of Appellate Counsel

Petitioner filed his direct appeal in this case with the assistance of appointed counsel. Appellate counsel elected to raise three claims as outlined in the Background of this Opinion. Petitioner, however, faults counsel for not raising several other challenges instead.

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test established by the Supreme Court to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. In proving prejudice with respect to the performance of appellate counsel, a petitioner must demonstrate a reasonable probability that but for appellate counsel's failure, "he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285-286 (2000). When *Strickland's* general standard is combined with

the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 122.

Petitioner asserts that appellate counsel should have challenged the allegedly unlawful unmerging of his previously merged convictions and sentences. He claims that there is no statutory authority in Oregon allowing for the unmerging of sentences, thus the sentencing court had no authority to unmerge his earlier sentences stemming from his Murder and Robbery convictions and impose new sentences. The PCR trial court specifically addressed this issue and recognized that there was not a specific statute prescribing the practice petitioner sought to challenge. Instead, the PCR trial court concluded that the sentencing court properly exercised its power under "the general court's ability to sentence and obligation to sentence and the fact that you had still two convictions that were convictions." Respondent's Exhibit 146, pp. 84-85. The court specifically explained as follows:

> Your issue concerning whether the court had authority to resentence is a legal issue. You weren't represented by a lawyer to make that argument. I --- I'm prepared to make a finding on that, which is it's a legal issue. The court can easily review and tell me if I'm wrong. I think the court had authority to resentence, despite the fact that one of these convictions had been vacated.
>
> \* \* \* \* \*
>
> Okay, there's no point in our arguing about this. I'm telling you legally that's what I

12 - OPINION AND ORDER

> believe to be a correct interpretation of the law.
>
> * * * * *
>
> But at this point, I am telling you that I am prepared to make a ruling, and am making a ruling that you were convicted of all of the charges. And then some of them were merged. The convictions, however, were never vacated for the remaining charges. The court had the authority to sentence on them. That's as clear as I can be and the issue is set up for appeal.

*Id* at 83-84.

It is clear from the record that the PCR trial judge concluded that the sentencing court had the authority under Oregon law to sentence petitioner as it did, and that the issue was squarely framed for the Oregon Court of Appeals. The Oregon Court of Appeals affirmed that decision. It is therefore evident that petitioner's sentence was valid as a matter of Oregon law, and is not subject to reinterpretation by a federal habeas court.[3] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Bains v. Cambra*, 204 F.3d 964, 972 (9th Cir.) ("a federal court is bound by the state court's interpretations of state law."), *cert. denied*, 531 U.S. 1037 (2000), citing *Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Mendez v.*

---

[3] It is also noteworthy that the Oregon Court of Appeals had separately concluded that where a defendant was convicted of multiple crimes including Aggravated Murder, and the court merged several of the convictions into the Aggravated Murder conviction which was later invalidated, the sentencing court on remand was properly within its authority to sentence on the convictions that had been previously merged. *State v. Wilson*, 161 Or. App. 314, 985 P.2d 840 (1999).

13 - OPINION AND ORDER

*Small*, 298 F.3d 1154, 1158 (9th Cir. 2002) ("A state court has the last word on the interpretation of state law."), citing *McSherry v. Block*, 880 F.2d 1049, 1052 (9th Cir. 1989), *cert. denied*, 499 U.S. 943 (1991); *Peltier v. Wright*, 15 F.3d 860, 862 (9th Cir. 1994) ("state courts are the ultimate expositors of state law.").

Petitioner also claims his appellate attorney should have challenged the validity of the indictment insofar as it did not specifically allege "Felony Murder" such that he could not be convicted and sentenced on that charge. At the conclusion of petitioner's first PCR action, the PCR trial court addressed this issue in its factual findings in the context of an ineffective assistance of trial counsel claim. The PCR trial court specifically concluded that "petitioner had been charged with murder committed 'in the course of and in the furtherance of' the crime of Robbery in the First Degree; i.e., felony murder." Respondent's Exhibit 128, p. 110. It is evident from this mixed factual finding and construction of state law that petitioner was, in fact, charged with Felony Murder. Accordingly, appellate counsel was under no obligation to challenge the indictment on this basis.

Although petitioner also faults appellate counsel for not raising the claims he argues in Ground One, *supra*, where the court has already determined that these claims lack merit, appellate counsel was under no obligation to raise them.

**IV. Ground Three: Right to Conflict-Free Counsel**

14 - OPINION AND ORDER

As Ground Three, petitioner alleges that attorney Cross was unable to provide conflict-free representation and failed to provide him with the audio tapes of their meetings. The court has already resolved these issues in respondent's favor in Ground One, thus petitioner is not entitled to relief on these claims here.

**V.   Ground Four: Ineffective Assistance of Sentencing Counsel**

As Ground Four, petitioner casts some of his previous claims as claims of ineffective assistance of sentencing counsel. For the reasons previously identified, the underlying claims lack merit such that sentencing counsel cannot be constitutionally faulted.

Petitioner also asserts that Cross failed to inform him of the U.S. Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and the proportionality component of Or. Const. Art. 1 § 16. Not only does petitioner not mention *Apprendi* in his briefing, but he also fails to establish that counsel could have made a meaningful argument that a life sentence for Murder is so disproportionate that the result of his sentencing proceeding would have been different had counsel raised the issue. See ORS 163.115(3) (1981) (requiring life sentence); *Cf. Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (25-year sentence for theft of three videotapes does not offend the Constitution).

Petitioner also asserts that Cross failed to challenge the remand order "on all available bases" but does not set out with specifics and argument what other available bases there might have been other than those already discussed in this Opinion.

15 - OPINION AND ORDER

Accordingly, the court finds this claim to be too generic upon which to provide a specific ruling.

Finally, petitioner contends that Cross failed to investigate, develop, and present any mitigation evidence at sentencing. Where counsel withdrew due to a breakdown of the attorney-client relationship and did not represent petitioner at sentencing, he was under no obligation to present evidence at sentencing. This fact aside, the absence of mitigation evidence where petitioner received the sentence required by law was not prejudicial.[4] For all of these reasons, and upon an independent review of the record, petitioner has not shown any state-court decision to be contrary to, or an unreasonable application of, clearly established federal law.

## CONCLUSION

For the reasons identified above, the Second Amended Petition for Writ of Habeas Corpus (#32) is denied. The court declines to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 20th day of June, 2016.

Robert E. Jones
United States District Judge

---

[4] To the extent petitioner believes mitigation evidence would be beneficial for purposes of parole, such evidence would be more appropriately presented to the parole board, not during his *pro se* sentencing. Although he would have liked the assistance of an attorney to develop such evidence, he was without counsel due to his own reluctance to cooperate with his many appointed attorneys.